**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WILLIAM H. REDDICK II,**

                    **Plaintiff,**                     **5:13-cv-4**
                                                       **(GLS)**

          **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                    **Defendant.**
_____
**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
William H. Reddick II
Pro Se
10-B-2769
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN          SANDRA M. GROSSFELD
United States Attorney             Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**

**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* William H. Reddick II challenges the Commissioner of

Social Security's denial of Supplemental Security Income (SSI), seeking

judicial review under 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.)  After

reviewing the administrative record and carefully considering Reddick's

arguments, the court affirms the Commissioner's decision and dismisses

the complaint.

### II. Background

On May 31, 2005, Reddick filed an application for SSI under the

Social Security Act ("the Act"), alleging disability since May 15, 2000.  (Tr.[1]

at 39, 116-18.)  After his application was denied, (*id.* at 57-60), Reddick

requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 61-

62).  A hearing was held on April 16, 2007, which was adjourned in order to

allow Reddick to obtain representation, (*id.* at 981-91), and after a

subsequent hearing on June 12, 2007, (*id.* at 948-80), the ALJ issued a

decision on February 14, 2008 denying the requested benefits, (*id.* at 40-

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (Dkt. No. 17.)

56).  On review, the Appeals Council vacated the ALJ's decision and

remanded the claim for further proceedings.  (*Id.* at 86-88.)  A

supplemental hearing was held on January 20, 2011.  (*Id.* at 82, 927-47).

On March 9, 2011, the ALJ issued an unfavorable decision denying the

requested benefits, which became the Commissioner's final determination

upon the Appeals Council's denial of review.  (*Id.* at 9-12, 17-36.)

Reddick commenced the present action by filing his complaint on

January 2, 2013 wherein he sought review of the Commissioner's

determination.  (Compl.)  The Commissioner filed an answer and a certified

copy of the administrative transcript.  (Dkt. Nos. 14, 17.)  Each party,

seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 20, 21.)

### III.  Contentions

Reddick contends that the Commissioner's decision is tainted by

legal error and is not supported by substantial evidence.[2]  (Dkt. No. 20 at

1-11.)  Specifically, Reddick argues that the ALJ: (1) improperly evaluated

---

[2] The court notes that Reddick's brief consists almost entirely of vague and conclusory assertions without specific reference to the portion of the record relied upon and citations to the relevant statutes, regulations, and cases supporting his position, (*see generally* Dkt. No. 20), as required by General Order 18.  In any event, because of Reddick's *pro se* status, the court has reviewed the ALJ's determination to ensure that it is supported by substantial evidence and that the correct legal standards were applied, in light of the general issues raised by Reddick in his brief.

3

his substance abuse; (2) incorrectly determined that his impairments did not meet a listed impairment; (3) erred in determining his residual functional capacity (RFC) by improperly weighing the record evidence; (4) incorrectly evaluated his credibility; and (5) improperly relied on the Medical-Vocational Guidelines. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 21 at 7-19.)

## IV.  Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 20 at 9-11; Dkt. No. 21 at 1-2.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y.

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

Mar. 19, 2008).

## VI. Discussion

## A. Materiality of Substance Use

Reddick first argues that "substantial evidence did not support [the] ALJ's determination that [Reddick]'s drug and alcohol use was a material contributing factor to his disability." (Dkt. No. 20 at 2.) The Commissioner responds that the ALJ found that in the absence of his substance abuse, Reddick would not be disabled within the meaning of the Act, and that this finding was supported by substantial evidence. (Dkt. No. 21 at 12-16.) The court agrees with the Commissioner that substantial evidence supports the ALJ's conclusion.

The Act, as amended in 1996, states that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." *Mims v. Apfel*, 182 F.3d 900, 1999 WL 376840, at *1 (2d Cir. 1999) (internal quotation marks and citation omitted). Accordingly, if the ALJ finds that the claimant is disabled utilizing the standard sequential analysis, and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ must then determine

5

"whether [the ALJ] would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 416.935(a), (b)(1). In making this determination, the ALJ must evaluate which of the claimant's limitations would remain if he stopped using drugs or alcohol, and then determine whether any or all of the remaining limitations would be disabling. *See id.* § 416.935(b)(2).

In her decision, the ALJ found that Reddick was "under a disability, but that a substance use disorder is a contributing factor material to the determination of disability," and, therefore, Reddick was not disabled under the meaning of the Act and not entitled to benefits. (Tr. at 21.) Specifically, the ALJ noted that if Reddick stopped his substance use, he would be able to perform a full range of work at all exertional levels and understand, carry out, and remember simple instructions, respond appropriately to supervision, and deal with changes in a routine work setting. (*Id.* at 31.)

Notably, the ALJ referred to Reddick's own statements that every time he encountered legal issues he was using drugs or alcohol. (*Id.* at 32, 503.) Additionally, the ALJ pointed as a reference to the time period when Reddick was incarcerated and therefore not using drugs or alcohol. (*Id.* at

6

32-33.)  During that time, Reddick had no disciplinary issues or documented problems following instructions, and was able to hold jobs. (*Id.* at 32-33, 137, 244.)  More importantly, even after he had been released from prison, during times when Reddick denied current drug or alcohol use, he was able to follow and understand simple directions and maintain attention and concentration.  (*Id.* at 33, 465-69.)  Reddick also acknowledged on several occasions that his substance use affected his mental health.  (*Id.* at 503, 787, 789.)  Reddick stated that he is "fine when he is not using."  (*Id.* at 503.)

In light of the foregoing, the court finds that the ALJ's finding that drug and alcohol abuse and dependency was a contributing factor material to the disability determination was supported by substantial evidence.  The record strongly indicates that Reddick's functioning improves significantly when he abstains from drugs and alcohol and complies with treatment, to the point where he is able to function with minimal limitation.

## B.    Listed Impairments

Next, Reddick contends that the ALJ erred in finding that Reddick did not have an impairment or combination of impairments which meet or medically equal listed impairments.  (Dkt. No. 20 at 6-7.)  The

7

Commissioner counters that Reddick did not meet his burden of showing that his impairments met a listed impairment.  (Dkt. No. 21 at 7-10.)  The court agrees with the Commissioner.

If a claimant's "impairment(s) meets or equals a listed impairment" and "meets the duration requirement," he will be found disabled.  20 C.F.R. § 416.920(d).  In order to qualify for listing severity, the claimant must show that he meets all the requirements of the listing consistently.  *See Evans v. Astrue*, No. 12-CV-6002, 2012 WL 6204219, at *3-4 (W.D.N.Y. Dec.12, 2012).

In order to satisfy the "paragraph B" criteria of the listings claimed by Reddick, a claimant's impairment(s) must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06, 12.08.

Here, the ALJ determined that, if Reddick stopped his substance use, he would not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in the regulations.

(Tr. at 30-31.)  Specifically, the ALJ found that Reddick's mental impairments, including his substance use disorder, did not meet any of the listed mental impairments because he had marked difficulties in social functioning, but no restriction in activities of daily living, no difficulties with concentration, persistence, or pace, and only one to two episodes of decompensation, but neither of conclusively extended duration.  (*Id.* at 26-27.)  The ALJ further found that if Reddick stopped his substance use, he would only have moderate difficulties in social functioning, and no episodes of decompensation.  (*Id.* at 30-31.)  Notably, as the ALJ pointed out, "[t]he record did not evidence any periods of decompensation when the claimant was abstaining from []substance abuse."  (*Id.* at 31.)  Therefore, he was unable to prove that his impairments satisfied the "paragraph B" criteria of any listed impairments.  *See* 20 C.F.R. § 416.920(d).  Accordingly, the court affirms the ALJ's step three determination that if Reddick stopped his substance use, he would not have an impairment that met any of the impairment listings.  (Tr. at 30-31.)

## C.   RFC Determination

With respect to the ALJ's RFC determination, Reddick argues that the ALJ improperly evaluated the opinion evidence.  (Dkt. No. 20 at 1-4, 6.)

9

Specifically, Reddick contends that the opinions of his treating physicians,

Drs. Edgar Stanley and Paula Zebrowski, should have been given

controlling weight.  (*Id.* at 11-12.)  The Commissioner asserts that the ALJ

properly gave these opinions limited weight because they opined on

ultimate determinations that are reserved to the Commissioner, they were

inconsistent with other evidence of record, and the ALJ gave good reasons

for rejecting them.  (Dkt. No. 21 at 10-12.)  The court agrees with the

Commissioner.

A claimant's RFC "is the most [he] can still do despite [his]

limitations."  20 C.F.R. § 416.945(a)(1).  In assessing a claimant's RFC, an

ALJ must consider "all of the relevant medical and other evidence,"

including a claimant's subjective complaints of pain.  *Id.* § 416.945(a)(3).

An ALJ's RFC determination must be supported by substantial evidence[4] in

the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is

conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v.*

*Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Controlling weight will be given to a treating source's opinion on the

---

[4] "Substantial evidence is defined as more than a mere scintilla.  It means such
relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v.*
*Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c)(2)-(6). The ALJ must provide "good reasons for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id*. (internal quotations and citation omitted).

Here, the ALJ gave only "limited weight" to the opinion of Dr. Stanley. (Tr. at 28.) Dr. Stanley excused Reddick from work for approximately six

months due to neck pain reported by Reddick, (*id.* at 534), but the ALJ

gave Dr. Stanley's opinion that Reddick was unable to work for that period

only limited weight because Dr. Stanley's examinations of Reddick were

essentially normal, and Reddick reported returning to build houses only

three days later, (*id.* at 28, 518, 534, 860).

In addition, the ALJ gave only "limited weight" to Dr. Zebrowski's

opinion that Reddick had marked limitations in his ability to deal with work

stress and maintain attention and concentration, (*id.* at 29, 32, 857),

because the ALJ noted that this opinion was Dr. Zebrowski's "best

estimate[] based on extremely limited time working with [Reddick]," and in

fact she had only seen Reddick on one occasion. (*Id.* at 857-58.)  Further,

her later opinion that Reddick was capable of no employment activities was

on an issue reserved to the Commissioner, and therefore considered, but

not given any special weight. (*Id.* at 29, 494); *see* 20 C.F.R. § 416.927(d).

Because these opinions regarding the severity of Reddick's

limitations were inconsistent with substantial evidence of record, the ALJ

did not err in giving them less than controlling weight. (*Id.* at 33-35); *see*

20 C.F.R. § 416.927(c)(4).  In sum, the weight afforded to the various

opinions by the ALJ, for reasons which are fully articulated in her written

12

decision, is supported by substantial evidence. (*Id.* at 27-29, 31-35.) The

ALJ also undertook a thorough discussion of the medical and testimonial

evidence of record, which indicates that Reddick can perform a full range

of unskilled work at all exertional levels. (*Id.*) As such, the court affirms

the ALJ's RFC determination.

## D.    Credibility

Reddick next argues that the ALJ improperly evaluated his credibility.

(Dkt. No. 20 at 1, 6.) As to this argument, Reddick simply states that "[t]he

ALJ's credibility determination was necessarily flawed," and that the ALJ

improperly rejected Reddick's testimony regarding his limitations. (*Id.*)

The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically

determinable impairment[] that could reasonably be expected to produce

the [symptoms] alleged," she "must evaluate the intensity and persistence

of those symptoms considering all of the available evidence; and, to the

extent that the claimant's [subjective] contentions are not substantiated by

the objective medical evidence, the ALJ must engage in a credibility

inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

quotation marks and citations omitted). In performing this analysis, the

ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vi)).

Here, the ALJ determined that Reddick's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Reddick's claims regarding the intensity, persistence, and limiting effects of his symptoms were not credible. (Tr. at 35.) In particular, the ALJ found that Reddick's allegations "were not supported by his clinical findings and were inconsistent with his activities, compliance issues, and improvement with medication." (*Id.*) This credibility determination is amply supported, and it reflects a fair application of the governing regulation.

Despite Reddick's claims that he had trouble getting along with others, had difficulty focusing for long periods, felt depressed, isolated, and nervous, and had difficulty sleeping, (*see, e.g.*, *id.* at 146, 147, 150), the record is replete with contradictory evidence. For example, the record demonstrates that Reddick was able to complete many daily activities, such as attending church, going grocery shopping and preparing meals, performing household repairs, and maintaining his personal hygeine. (*Id.* at 147, 148, 149.) In addition, records show that Reddick's mood improved with treatment and medication, which Reddick himself acknowledged, (*id.* at 244, 706, 720, 835), he was able to work independently, (*id.* at 245), and he could maintain regular sleep and an "interest in life," (*id.* at 835). Moreover, it is clear that the ALJ appropriately considered the factors set forth in 20 C.F.R. § 416.929(c)(3) by her specific reference to § 416.929, and discussion of Reddick's daily activities, the intensity of his symptoms, and his response to medications and treatment. (*Id.* at 31-35.)

## E.    Step Five Determination

Lastly, Reddick contends that the ALJ's reliance on the Medical-Vocational Guidelines in determining his vocational ability was improper. (Dkt. No. 20 at 2, 4-5.) The Commissioner responds that the ALJ's

reliance on the Medical-Vocational Guidelines to determine that Reddick

could perform other work was appropriate.  (Dkt. No. 21 at 18-19.)  The

court agrees with the Commissioner.

Initially, the Regulations provide that the "mental activities . . .

generally required by competitive, remunerative, unskilled work [include

u]nderstanding, remembering, and carrying out simple instructions[;

m]aking judgments that are commensurate with the functions of unskilled

work—i.e., simple work-related decisions[; r]esponding appropriately to

supervision, co-workers and usual work situations[; and d]ealing with

changes in a routine work setting."  SSR 96-9p, 61 Fed. Reg. 34,478,

34,483 (July 2,1996); *see* 20 C.F.R. § 416.921(b)(3)-(6).  Moreover, in

making a step five ruling, an ALJ may rely on the Medical-Vocational

Guidelines found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the

claimant's age, education, work experience, and RFC coincide with the

criteria of a rule contained in those Guidelines.  *See* 20 C.F.R. § 416.969;

*see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009).

However, when a claimant's nonexertional impairments "significantly limit

the range of work permitted by his exertional limitations," the

Commissioner "must introduce the testimony of a vocational expert (or

other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603, 605 (2d Cir. 1986)

Reddick argues that the ALJ's reliance on the grid guidelines "was improper" and that "[s]ubstantial evidence did not support [the] ALJ's finding that there were a significant number of jobs in the economy that [Reddick] could perform." (Dkt. No. 20 at 2, 4-5.) Despite Reddick's impairment, the ALJ found that, "if [Reddick] stopped the substance abuse he would have no significant limitations in the performance of . . . basic mental demands of work." (Tr. at 36.) This conclusion was supported by substantial record evidence, namely the opinion of Dr. Kristen Barry, consultative examiner, who opined that Reddick was "able to follow and understand simple directions and instructions . . . [and] able to maintain his attention and concentration," (*Id.* at 33, 468.) The ALJ gave Dr. Barry's opinion "some weight" because it was based on a one-time examination. (*Id.* at 33.) However, the ALJ also noted the opinion of a state medical consultant, who opined that Reddick retained the ability, with no significant limitations, to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to maintain a

17

routine without special supervision, and to make simple work-related

decisions.  (*Id.* at 33, 484-85).  The ALJ gave this opinion "significant

weight," although the reviewing psychologist did not personally examine

Reddick, because the psychologist reviewed Reddick's records and

"rendered an opinion that was consistent with the evidence of record."  (*Id.*

at 33.)

Thus, after noting the mental abilities required for unskilled work and

concluding that the evidence establishes that Reddick has no significant

limitations in the performance of these basic mental demands of work, the

ALJ applied the grid guidelines and found Reddick not disabled because

there would be a significant number of jobs in the national economy that

Reddick could perform.  (*Id.* at 35-36); *see* SSR 83-10, 1983 WL 31251, at

*3 (1983) (explaining that the rules contained in the grid guidelines "reflect[]

the presence of nonexertional capabilities sufficient to perform unskilled

work at the pertinent exertional levels").  As the ALJ determined—with the

support of substantial evidence—that Reddick's nonexertional impairments

did not "'significantly limit the range of work permitted by his exertional

limitations,'" consultation with a vocational expert was not required.  *Bapp*,

802 F.2d at 605 (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th

Cir. 1983)); *see* SSR 83-14, 1983 WL 31254, at \*4-5 (1983); SSR 85-15, 1985 WL 56857, at \*7-8 (1985).

## F.      Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it correctly applies the relevant legal standards and is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Reddick's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 19, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court